# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>Information associated with cellular telephone assigned call number (616) 291-8432, that is stored at premises controlled by Sprint located at 6480 Sprint Parkway, Overland Park, Kansas 66251 | ) ) ) ) ) ) Case No. 1:20MJ221 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of Kansas, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. Section 922(u) | Theft from a Federal Firearms Licensee |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Michael B. Newsome
*Applicant's signature*

/S/Michael B. Newsome, Special Agent, ATF
*Printed name and title*

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means (by telephone).

Date: 7/31/2020

*Judge's signature*

City and state: Winston-Salem, North Carolina    Joi Elizabeth Peake, United States Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

In the Matter of the Search of:
Information associated with cellular telephone assigned call number **(616) 291-8432**, that is stored at premises controlled by Sprint located at 6480 Sprint Parkway, Overland Park, Kansas 66251

Case No. 1:20MJ221

## AFFIDAVIT IN SUPPORT OF A SEARCH AND SEIZURE WARRANT

I, Michael B. Newsome, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **(616) 291-8432**, that is stored at premises owned, maintained, controlled, or operated by Sprint Corporation, hereinafter referred to as "Sprint", a wireless telephone service provider, headquartered at 6480 Sprint Parkway, Overland Park, Kansas 66251. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(b)(1)(A) and 2703(c)(1)(A) to require Sprint to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been since May 2017. I am a graduate of the Federal Law Enforcement Training Center ("FLETC") Criminal Investigator Training Program, as well as the

ATF National Academy, where I received extensive training in the investigation of firearm, controlled substance, arson, and explosive offenses. Prior to my career with ATF, I worked for the Rocky Mount Police Department in North Carolina for approximately nine and a half years. During my tenure with the Rocky Mount Police Department, I served as a duly sworn Task Force Officer with ATF from 2014 – 2017. During my career in law enforcement, I have conducted and assisted with numerous complex case investigations involving violations of the Federal firearms, arson, and explosives laws, as well as other violations of the United States Code, to include violent crimes and controlled substance offenses. Prior to my career in law enforcement, I attended North Carolina State University and graduated in 2007 with a Bachelor of Arts Degree in Criminology.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth herein, there is probable cause to believe that violations of Title 18, United States Code (U.S.C.) § 922(u) [Theft from a Federal Firearms Licensee] have been committed by Javier Jaylen CLAYBROOKS and Jahsir Justin CLAYBROOKS. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(b)(1)(A) &

(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

PROBABLE CAUSE

6. During the month of June 2020, the ATF Greensboro Field Office began to respond to a notable increase in the number of Federal Firearms Licensee (FFL) burglaries throughout the Middle District of North Carolina. The ATF has worked in conjunction with multiple agencies across several jurisdictions in an attempt to identify and apprehend those responsible for these crimes. One of the many FFL burglaries that occurred during the month of June, was the burglary of Sportsman Supply and Grocery in Liberty, North Carolina on June 24, 2020.

7. On June 24, 2020, at approximately 2:24 a.m., the Randolph County Sheriff's Office (RCSO) responded to an alarm activation at Sportsman's Supply and Grocery, a FFL and convenience store located at 4508 NC Highway 49 N. Liberty, North Carolina. Upon arrival, deputies discovered that entry had been gained through a window on the business. Deputies determined that the suspects had already fled the scene prior their arrival.

8. A review of the surveillance video revealed that a lone suspect approached the business on foot and sprayed the exterior cameras with black spray paint. Evidence located at the scene suggested the suspect then utilized an acetylene torch to remove metal bars covering a window on the north side of the business. After removing the bars, the suspect made entry to the business by shattering the window. Once inside, the suspect proceeded to steal twenty-three (23) handguns and three (3) long guns from the business. The suspect also removed numerous firearm magazines, firearm attachments, and lottery tickets. Interior surveillance cameras were

3

reviewed which revealed the suspect appeared to be of African American descent. The suspect was wearing a ski mask and was also wearing gloves.

9. Randolph County Sheriff's Office Detective Ryan Welch was assigned as the lead investigator for this burglary. Detective Welch contacted the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Greensboro Field Office and requested assistance with the investigation. I spoke with Detective Welch on June 24, 2020 and was briefed on the burglary. Detective Welch advised that during a canvass of the area, he and his partner had located a debit card lying next to a driveway across the street from the business bearing the name Jahsir Claybrook. Detective Welch collected the debit card as evidence to determine if it was possibly related to the burglary.

10. On June 28, 2020, Detective Welch received notification that two (2) of the handguns stolen from Sportsman Supply and Grocery had been recovered in Hancock County, Ohio during a traffic stop. Detective Welch was informed that a deputy with the Hancock County Sheriff's Office (HCSO) conducted a traffic stop on a vehicle traveling above the posted speed limit. This vehicle was later determined to be occupied by Jahsir Justin CLAYBROOKS and Javier Jalen CLAYBROOKS who reside at 4208 Stonehenge Drive, Greensboro, North Carolina. Jahsir and Javier, who identified themselves as brothers, advised that they were traveling to Michigan for a family funeral.

11. During his traffic investigation, the deputy detected an odor he recognized as raw marijuana emitting from the vehicle's passenger area. Jahsir and Javier admitted that they had smoked marijuana earlier and showed the deputy evidence of the burned marijuana in the ash tray. Both occupants were asked to exit the vehicle while a probable cause search was

4

conducted. During his search of the interior of the vehicle, the deputy located a set of digital scales and an odor seal bag which contained a green, leafy substance suspected to be marijuana.

12. Next, the deputy proceeded to search the trunk of the vehicle. The deputy immediately noticed an acetylene torch inside of the trunk. The deputy also noticed two (2) suitcases. Upon searching the first suitcase, the deputy located a Glock, Model 20, 10mm pistol, bearing serial number BNNN474. The serial number was queried which confirmed that the handgun was stolen during the burglary of Sportsman Supply and Grocery in Liberty, North Carolina. Both Javier and Jahsir were detained at this time.

13. Upon searching the spare tire compartment in the trunk, the deputy located a second handgun hidden in the tire well. This handgun was determined to be a Glock, Model 17, 9mm handgun, bearing serial number BFRT810. This serial number was queried which revealed that it was also stolen from Sportsman Supply and Grocery. Deputies also located twenty-five (25) credit cards inside of the vehicle bearing the names of multiple individuals. In addition to the credit cards, deputies located a credit card reader and a credit card embosser. Javier and Jahsir CLAYBROOKS were both taken into custody for charges related to the investigation and transported to the Hancock County Justice Center.

14. After receiving notification of the recovery, Detective Welch and I began to gather intelligence on Javier and Jahsir CLAYBROOKS in order to confirm their residency in North Carolina. I was able to determine that Javier was currently on supervised probation in North Carolina for a Misdemeanor Breaking and Entering conviction. I contacted Guilford County Probation and Parole and confirmed that Javier CLAYBROOKS met with his

5

supervising officer on June 18, 2020, and reported his residence to be 4208 Stonehenge Dr. Greensboro, North Carolina.

15. While speaking with probation, I asked if Javier had a cellular telephone number listed with them. I was informed that Javier had reported his number to be **(616) 291-8432**. I inquired as to the latest contact that probation had made with Javier on this cellular telephone number. I was advised that Javier's supervising officer had spoken to him at this telephone number on June 28, 2020. This contact occurred shortly before the arrest of Javier and Jahsir CLAYBROOKS in Hancock County, Ohio. Probation advised that Javier told his supervising officer that he was in Charlotte, North Carolina, at that time.

16. Based upon my conversation with Guilford County Probation and Parole, I believe that **(616) 291-8432** is the cellular telephone number that was utilized by Javier CLAYBROOKS during the time period surrounding the burglary of Sportsman Supply and Grocery on June 24, 2020. I confirmed that Sprint is the telephone service provider who maintains and controls records associated with this call number. As such, I sent a preservation request to Sprint on July 17, 2020, in an effort to preserve records related to this cellular telephone number.

17. On June 29, 2020, RCSO Detective Welch obtained a state search warrant for 4208 Stonehenge Dr. Greensboro, North Carolina. This warrant was executed with the assistance of the Guilford County Sheriff's Office (GCSO) and the ATF. During the search, investigators located and seized multiple items of evidence believed to be related to the burglary of Sportsman Supply and Grocery including: price tags from firearms, a gun lock, a sales receipt for an acetylene torch, an empty box for an acetylene torch, firearm magazines, a ski mask, and a

6

glove. All of these items were seized and submitted into evidence. None of the remaining stolen firearms were located at the residence.

18. While packaging the evidence seized during the execution of the search warrant, I examined the sales receipt detailing the purchase of an acetylene torch. I observed that the torch was purchased from Lowe's Home Improvement located in Burlington, North Carolina, on June 22, 2020, two days prior to the burglary of Sportsman Supply and Grocery. On July 2, 2020, I responded to Lowe's Home Improvement and made contact with the Loss Prevention Officer. I was allowed to view the surveillance video associated with this transaction. By review of the surveillance video, I was able to confirm that the torch was purchased by Jahsir CLAYBROOKS. A copy of the surveillance video was obtained and submitted into evidence.

19. As of this application, Javier and Jahsir CLAYBROOKS remain in custody in Hancock County, Ohio, pending extradition back to North Carolina.

## HISTORICAL CELLULAR TELPHONE RECORDS

20. I know from my training and experience that when a person makes or receives a call using a cellular telephone their mobile device will be connected to cellular telephone sites and other wireless networks. I also know that cellular telephones generally connect to the cellular telephone tower associated with the strongest signal from the appropriate network provider. I know that cellular telephone providers can often provide detailed records of all in-coming and out-going calls, text messages, voice mail messages, estimated geo-location information and other data that are processed through a specific cell site for a given date and time.

7

21. I know that locating a particular mobile user's device may result in the discovery of additional evidence that may be stored on the mobile device. Live and deleted data recovered from mobile devices may show evidence of current, on-going, future, and past criminal activity. Such information can be used to identify victims, witnesses, associates and co-conspirators. I also know that data from these devices can often include user attribution data that can identify the person(s) who sent, received, created, viewed, modified, or otherwise had control over particular content.

22. I also know from my training and experience that Mobile Network Operators ("MNOs"), such as Sprint, commonly collect and store historical precision location information that may provide historical geographic location of a user's mobile device. This data may provide the approximate location of the user's mobile device. Based on my training and experience, I know that Sprint collects precision location data, which Sprint also refers to as "Per Call Measurement Detail" (PCMD). This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

23. Additionally, I know from my training and experience that cellular telephone providers maintain account records on users and particular devices connected to their networks. I also know that when cellular telephone calls are completed, the cellular telephone companies record and retain certain information including in-coming and out-going numbers, the time and duration of calls, voice mail, browsing data, text messages ("SMS"/"MMS"), Internet Protocol ("IP") connection logs, and the towers and sectors that handled the calls. I know from my training and experience that the numbers obtained from these records can be used to obtain the subscriber information for a particular cellular telephone provider in an effort to identify a

potential suspect (or suspects). These records can be further analyzed to determine specific activity during a particular time frame and geographic area.

24. I also know that cellular telephone records, commonly referred to as Call Detail Records ("CDRs") and other records such as PCMD, may support evidence of current, on-going, future, and past criminal activity. I know that such information can be used to identify victims, witnesses, associates and co-conspirators. I also know that data from these devices can often include Cell Site Location Information ("CSLI") that may provide network, cell tower, and/or antenna data that serviced a particular mobile device as well as precision location information that may provide an estimate of a user's mobile device location. I also know from my training and experience that this information is available through particular cellular telephone providers and that these providers operate as public utility companies.

25. I also know that by obtaining CSLI on the dates before and after an event can tend to prove that the user had possession of the mobile device during the relevant time period. Additionally, I have found that by obtaining CSLI for several weeks before and after the crime under investigation, I am able to establish a "pattern of life" for the person whom I am investigating. Based upon my training and experience, the relevancy of the location of the device is usually dependent upon how often the user frequents the location where the crime occurred. Examination of these records often leads to the discovery of evidence which can either be incriminating or exculpatory.

26. I also know that it is necessary to obtain subscriber information to properly identify individuals who may be associated with telephone numbers revealed from the received Call Detail Records.

9

## AUTHORIZATION REQUEST

27. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. §§ 2703(b)(1)(A) and 2703(c)(1)(A) as well as Federal Rule of Criminal Procedure 41. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(u) [Theft from a Federal Firearms Licensee] have been committed. There is also probable cause to search the records described in Attachment A for evidence of this crime, as further described in Attachment B.

28. I further request that the Court direct Sprint to disclose to the government any information described in Section I of Attachment B that is within their possession, custody, or control. Because the warrant will be served on Sprint, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

/S/Michael B. Newsome
Michael B. Newsome
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means (by telephone), on this **31** day of **July**, 2020, at **9:53** a.m./p.m.

THE HONORABLE JOI ELIZABETH PEAKE
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF NORTH CAROLINA

10

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with a certain cellular telephone assigned call number **(616) 291-8432**, that is stored at premises owned, maintained, controlled, or operated by Sprint, a wireless telephone service provider, headquartered at 6480 Sprint Parkway, Overland Park, Kansas 66251.

## ATTACHMENT B

## Particular Things to be Seized

I.  **Information to be disclosed by Sprint**

To the extent that the information described in Attachment A is within the possession, custody, or control of Sprint, including any information that has been deleted but is still available to Sprint or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Sprint is required to disclose to the government the following information pertaining to a certain cellular telephone assigned call number **(616) 291-8432**, as more fully described in Attachment A, for the time period June 22, 2020 through June 28, 2020:

1. **Specialized Location Records**: All call, text and data connection location information, related to all specialized carrier records which may be referred to as PCMD, Mediation Records, E9-1-1, and/or Historical GPS/Mobile Locate Information which shows GPS location (longitude and latitude) and Cell-Site and sector of the device in relationship to the network when connected to the network for the cellular telephone number referenced above;

2. **Call/Text/Data Detail Records**: All records associated with the above referenced cellular telephone number, to include all numbers that communicate with the above listed cellular telephone number relating to all delivered and undelivered inbound and outbound calls, text messages, and text message content to the above listed cellular telephone number, all voice mail, and all data connections, and to include Cell-site and sector, date, time, direction, duration, number called or text to and/or received from, and bytes up/down, information related to each call, text or data connection, all text message content, and voicemails, as well as Call to

1

Destination/Dialed Digits search for the above listed cellular telephone number. Please preserve all cell-site and sector information related to each call, text or data connections;

3. **Electronically Stored Records**: All records associated with the above referenced cellular telephone number, to include all stored communication or files, including voice mail, text messages, including numbers text to and received from and all related content, e-mail, digital images (*e.g.*, pictures), contact lists, video calling, web activity (name of web site or application visited or accessed), domain accessed, data connections (to include Internet Service Providers ("ISPs"), Internet Protocol ("IP") addresses, IP Session data, IP Destination Data, bookmarks, data sessions, name of web sites and/or applications accessed), date and time when all web sites, applications, and/or third party applications were accessed and the duration of each web site, application, and/or third party application was accessed, and any other files including all cell site and sector information associated with each connection and/or record associated with the above listed cellular telephone number;

4. **Carrier Key** related to call detail, text messages, data connections, IP logs, IP Sessions, web site and/or application connections, and cell site information;

5. **Cloud Storage**: Content stored in remote storage or 'cloud accounts' associated with the above listed cellular telephone number including, but not limited to, contacts, call logs, SMS and MMS messages with associated content including audio, video, and image files, digital images and videos, and files or documents;

6. **Cell Site List(s)**: List of all cell-sites for all state(s) in which the above records used cell locations. Cell site lists to include switch, cell-site number, name,

2

physical address, longitude and latitude, all sectors associated with each cell-site, azimuth, and beam-width of each related sector;

7. **Subscriber Records:**

    a. Names (including subscriber names, user names, and screen names);

    b. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    c. Local and long distance telephone connection records;

    d. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    e. Length of service (including start date) and types of service utilized;

    f. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    g. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    h. Means and source of payment for such service (including any credit card or bank account number) and billing records.

8. Any other records and other evidence relating to the above listed cellular telephone

3

number. Such records and other evidence include correspondence and other records of contact by any person or entity about the above listed cellular telephone number, the content and connection logs associated with or relating to postings, communications and any other activities to or through the above listed cellular telephone number, whether such records or other evidence are in electronic or other form.

II. **Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of Title 18 U.S.C. § 922(u) [Theft from a Federal Firearms Licensee] involving Javier CLAYBROOKS, Jahsir CLAYBROOKS, and Sprint number **(616) 291-8432** during the period between June 22, 2020 to June 28, 2020 as follows:

1. Historical location information that provides the location of the user's mobile device from June 22, 2020 through June 28, 2020
2. Any communication referencing the theft of firearms
3. Any communication referencing the distribution of firearms;
4. Any communication referencing firearms dealers;
5. Any communication referencing preparatory steps taken in furtherance of the scheme;
6. Any communication between Javier CLAYBROOKS, Jahsir CLAYBROOKS, and others, regarding the scheme and/or related crimes;
7. Records relating to who created, used, or communicated with the account holder from June 22, 2020 through June 28, 2020.

4